521 So.2d 798 (1988)
Currie YOUNG, Plaintiff-Appellant,
v.
ROYAL JONES & ASSOCIATES, et al., Defendants-Appellees.
No. 19372-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
Rehearing Denied March 25, 1988.
*799 C. Sherburne Sentell, Minden, for plaintiff-appellant.
Cook, Yancey, King & Galloway by Charles G. Tutt, Shreveport, Theus, Grisham, Davis & Leigh by Thomas G. Zentner, Jr., Monroe, for defendants-appellees.
Before MARVIN, SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiff, Currie Young, filed this lawsuit claiming worker's compensation benefits, or, in the alternative, damages in tort. Named as defendants were Royal Jones & Associates, Inc., ("Royal Jones"), who allegedly hired the plaintiff, and its insurer, The Hartford Insurance Company; and Country Skillet Poultry, a subsidiary of Con-Agra, Inc., ("Con-Agra"), on whose premises the plaintiff was injured. Both Royal Jones and Con-Agra denied hiring the plaintiff. The plaintiff appealed from a trial court judgment dismissing his claims against all the defendants. For the following reasons, we reverse the trial court judgment in part, affirm in part, and remand the case for further proceedings.

FACTS
In the summer of 1982, the Con-Agra chicken processing plant at Arcadia, Louisiana, was undergoing renovations and remodeling. Con-Agra had contracted with Royal Jones, an international original equipment manufacturer and general contractor for the food industry, to rebuild the plant's four existing cookers and to install a fifth cooker. Each cooker was about five feet in diameter and sixteen feet long, and weighed approximately 24,000 pounds. These cookers protrude through concrete cinder block walls. In order to install the new cooker, it was necessary to construct concrete piers to support the pressure vessel.
Royal Jones found that it would be cost-effective to engage a local subcontractor to do this relatively small portion of the overall project. Jerry Donaldson, Royal Jones' corporate engineer in charge of projects and engineering, consulted with Sammy Matthews, a superintendent at Con-Agra. Mr. Matthews recommended the plaintiff to do the work as he had previously performed several small concrete jobs at Con-Agra. Mr. Matthews called the plaintiff's home and left word for Mr. Young to contact him about a job.
On Thursday, June 3, 1982, Mr. Matthews introduced the plaintiff to Mr. Donaldson at the Con-Agra plant. The plaintiff and Mr. Donaldson went to the site where the cooker was to be installed, and discussed the work that needed to be done in the area.
The exact contents of this conversation are in dispute. The plaintiff testified at trial that Mr. Donaldson explained in detail the work he wanted the plaintiff to perform. Then Mr. Donaldson asked about the plaintiff's rates, and the plaintiff quoted him a rate of $12.00 per hour for himself and $7.00 per hour for his helper. Mr. Donaldson hired the plaintiff and asked him when he could begin work. The plaintiff assured him that he could begin the following Monday. Mr. Donaldson commented to the plaintiff that the company was rushing him and that he wanted to "get started." Mr. Donaldson also told the plaintiff he would be back the following Friday and would pay him at that time.
Mr. Donaldson agreed that he and the plaintiff discussed the work to be done.
*800 However, he testified that he requested that the plaintiff prepare a bid, which could be submitted to either him or Mr. Matthews, who in turn would contact Mr. Donaldson. He further claimed that the plaintiff represented himself as a contractor who didn't personally perform the work, but who had a work crew. He denied telling the plaintiff that the job was his, and that he could start work on Monday. However, he did concede that he told the plaintiff that he was the only party "bidding" on the job.
Because plaintiff believed that he was hired, he began to make arrangements to begin work on the job. Based upon the instructions given him by Mr. Donaldson, he determined that it would be necessary to use a jackhammer to break up the concrete floor to begin construction of the piers. He went to Minden and rented a jackhammer for this purpose. Plaintiff's son, who was his helper, was apparently told by his father that they would start the job on Monday. On Monday, June 7, 1982, plaintiff and his son arrived at the plant early on that morning to begin work. The plaintiff began to use the jackhammer to dig through the concrete floor in preparation for building a pier. The plaintiff had been using the jackhammer for at least an hour, and perhaps longer, when several cinder blocks from a nearby wall fell on him. He was struck on his back, arms, chest and head. He was rendered momentarily unconscious. The plaintiff was hospitalized for several days. Neither Con-Agra nor Royal Jones paid worker's compensation benefits or the plaintiff's medical bills.
This lawsuit was filed on June 6, 1983. Royal Jones and Hartford filed a petition of intervention against plaintiff and Con-Agra for apportionment of any judgment in accordance with LSA-R.S. 23:1101, et seq. They also alleged victim fault. Con-Agra filed a cross claim against Royal Jones and Hartford for indemnification; it alleged the plaintiff's assumption of the risk. The issues of liability and damages were bifurcated. The trial on the issue of liability was held on March 10, 1987. The trial court rendered judgment in favor of the defendants, dismissing the plaintiff's demands with prejudice and at his cost. The judgment was signed on April 3, 1987.
The plaintiff appealed, listing nine assignments of error. The first eight assignments address the question of whether the trial court properly applied the presumption of employment established by LSA-R. S. 23:1044. Additionally, the plaintiff assigns as error the trial court's ruling that the plaintiff failed to prove negligence or strict liability on the part of the defendants.

PRESUMPTION OF EMPLOYMENT
In his first eight assignments of error, the plaintiff claims that the trial court erred in determining that he was not an employee[1] of either Con-Agra or Royal Jones, particularly in light of the presumption of employment established by LSA-R. S. 23:1044.
LSA-R.S. 23:1044 states, in pertinent part:
A person rendering service for another in any trades, businesses or occupations covered by this Chapter is presumed to be an employee under this Chapter.
This presumption, however, may be rebutted upon proof that there was no contract of employment, expressed or implied, between the alleged employee and the alleged employer. Lewis v. Bellow, 212 So. 2d 540 (La.App. 3rd Cir.1968); Gaspard v. Travelers Insurance Company, 284 So.2d 104 (La.App. 3rd Cir.1973).
A person may become an employee within the meaning of the Worker's Compensation Act if he is performing a service for another with the latter's consent and subject to his control or direction. No formal contract between the two is necessary and there need be no specific agreement as to how much is to be done or how long the *801 arrangement shall continue. It is not required that the amount or terms of payment be settled, as long as the circumstances fairly indicate that the services were not intended as a gratuity and both parties understood that payment was to be made therefor. Malone and Johnson, Worker's Compensation, 2d Ed., § 52, p. 71; Arnold v. McConnell, 424 So.2d 402 (La.App. 2d Cir.1982).
In denying recovery, and stating that plaintiff was not employed until a bid was submitted, the trial judge apparently accepted the testimony of Mr. Donaldson over that of plaintiff because the judge did not think that Royal Jones and Associates would be "so sloppy" in its hiring practices. The trial court also reasoned that plaintiff's credibility was suspect because he was the only witness who testified that he was working on the concrete floor when the accident occurred. We believe the trial court was clearly wrong in its assessment of the evidence, and particularly in not giving due weight to the presumption of employment established by the statute. LSA-R.S. 23:1044.
There is no basis upon which the trial court could determine whether the hiring practices of Royal Jones and Associates were "sloppy" or efficient, particularly in this case, when a worker was hired to perform a job which was a very small part of the overall renovation of the plant. Further, the record reveals that the replacement employee hired by Mr. Donaldson to complete the project following plaintiff's injury was hired in a manner which was very similar to the manner in which plaintiff was hired, i.e., the replacement was taken to the job site and shown what to do and was hired "on the spot." Although Mr. Donaldson said the replacement submitted a "bid," he acknowledged that the new employee did not give a specific price for the job, but told Mr. Donaldson verbally that he would not exceed a particular price. The replacement employee did not testify.
As to the trial court's concern about plaintiff's location and the work he was doing immediately prior to the accident, the record reveals that plaintiff was breaking up the concrete floor with the jackhammer in an area near the cinder block wall. The plaintiff steadfastly maintained throughout his testimony that he was working on the floor, not the wall. The plaintiff's testimony that he was using the jackhammer on the floor was corroborated by Richard Ellis, a Con-Agra employee who worked in the Rendering plant. In both his trial testimony and his February, 1986, deposition, which was filed into evidence, Mr. Ellis said that he saw and heard the plaintiff "digging up" the floor with the jackhammer.
Although there are some inconsistancies in the testimony of the witnesses, these inconsistancies do not bear upon the contested issues at trial and are easily explained by the time lapse between the accident and the trial, which was a period of almost five years. With the exception of Mr. Donaldson, and possibly Mr. Matthews, the witnesses were men of very limited education, several of whom were illiterate.
The trial court placed great emphasis on Mr. Donaldson's "interpretation" of his conversation with the plaintiff on June 3, 1982. However, the trial court failed to adequately consider and give due weight to the plaintiff's "interpretation" of the conversation.
At the time of trial, the plaintiff was sixty-three years old. He stated that prior to the accident he had engaged in cement work for about twenty-five years. He has only a sixth grade education, and is unable to read or write. He testified that he did not work on a bid basis, that he had never submitted a bid and did not know how to do so, and that he had never shown up to work on a job when he had not already been hired.
On the other hand, Mr. Donaldson is the executive vice-president at Royal Jones. His job in 1982, as corporate engineer, required him to fly from job site to job site, making arrangements on various projects. While he claimed that he worked on a bid/purchase order basis, he admitted that the plaintiff was the only person "bidding" on this job, and that he intended to give him the job if he was satisfied with the price. Furthermore, as noted previously, *802 he conceded that when he engaged the plaintiff's replacement, he indicated that he gave the replacement the concrete job on the same day he met with the man.
A wide divergence of education and experience separate the two men, with the plaintiff obviously lacking Mr. Donaldson's business savvy. In view of all of the facts, it is more reasonable to conclude that Mr. Donaldson gave plaintiff the job after their June 3, 1982, meeting. This reasonableness, coupled with the trial court's failure to consider and give due weight to the plaintiff's good work record, his previous employment at Con-Agra, the small job to be performed in relationship to the overall renovation, the actions plaintiff took immediately following his conversation with Mr. Donaldson, coupled with the presumption of employment contained in LSA-R.S. 23:1044, lead to the inescapable conclusion that plaintiff was an employee of Royal Jones at the time of the accident. Harper v. Ragus, 62 So.2d 167 (La.App. 2d Cir. 1952); Stull v. Russo, 85 So.2d 112 (La. App. 1st Cir.1955).
However, the presumption of employment was rebutted in relation to Con-Agra. The plaintiff himself testified that he did not think he was hired by Con-Agra. Had he been hired by Con-Agra, he said he would have talked with Mr. Matthews, not Mr. Donaldson. Mr. Donaldson also testified that Royal Jones would be the one paying the person who performed the concrete work.
In light of the above, we find the trial court erred in holding that the evidence was sufficient to rebut the presumption that the plaintiff was an employee of Royal Jones. The trial court judgment is reversed to that extent and this case shall be remanded for a determination by the trial court of the amount due to plaintiff under the provisions of the Louisiana Workers Compensation Statute.

NEGLIGENCE/STRICT LIABILITY
In his remaining assignment of error, the plaintiff alleges that the defendants, particularly Con-Agra, are liable under a theory of negligence and/or strict liability. The trial court correctly rejected these arguments.
Inasmuch as the plaintiff was an employee of Royal Jones, his exclusive remedy against Royal Jones lies in worker's compensation. LSA-R.S. 23:1032; Stewart v. Sam Wallace Industrial Company, 409 So.2d 335 (La.App. 1st Cir.1981), writs denied, 413 So.2d 497 (La.1982). Consequently, we only consider Con-Agra's possible tort liability.
To show negligence against an owner, a plaintiff must prove that the thing created an unreasonable risk of injury that resulted in damage, that the owner knew or should have known of the risk, and the owner failed to either remedy the situation, render the thing safe or take steps to prevent injury. Under strict liability the plaintiff is relieved only of proving the owner's knowledge of the defect. He must still prove that the thing presented an unreasonable risk of harm which resulted in the damage or must prove, as some decisions have characterized this element of proof, that the thing was defective. Kent v. Gulf State Utilities Company, 418 So.2d 493 (La. 1982).
It is incumbant upon the plaintiff to prove that his injuries were caused by a quality of the building that posed an unreasonable risk of harm to persons. The owner cannot be held responsible for injuries resulting from all risks posed by his building, but only for those injuries caused by unreasonable risk of harm to others. Entrevia v. Hood, 427 So.2d 1146 (La.1983). The unreasonable risk of harm criteria is not a simple rule of law which may be applied mechanically to the facts of a case. It is a concept employed to symbolize the judicial process required by the civil code. The interpreter's duty is to decide which risks are encompassed by the codal obligations from the standpoint of justice and social utility. Entrevia, supra; Madden v. Saik, 511 So.2d 855 (La.App. 4th Cir.1987).
In order for plaintiff to recover, the record must support a conclusion that a defect exists. The record must establish more than that a particular condition caused plaintiff's injuries. The condition must create an unreasonable risk of harm.
We find no error in the trial court's ruling that the plaintiff failed to carry his *803 burden of proving a "defect" in the Con-Agra wall. Mr. Donaldson testified that there was a small section of the outside perimeter wall which had been dismantled by his men about thirty days before the accident. A service hole had been made in the wall and it was located approximately five feet away from the area where the plaintiff was injured. However, the plaintiff was the only person to testify about possible reasons for the fall of the cinder blocks. Even he admitted that he did not know what caused the accident. He stated that he could only think of two possible reasons for the cinder blocks to fallthat the persons who removed some of the blocks from the wall might have weakened the wall, or that whoever constructed the wall failed to properly prepare the mortar.
The plaintiff further testified that he looked at the wall and made sure that it was all right before he began work. He stated that "It didn't look like nothing was going to fall."
The plaintiff presented no additional evidence to support his claim that the wall was defective. On the showing made, he failed to prove an unreasonable risk of harm. No evidence establishes any inadequacy in the mortar, or any other indication that the wall was constructed poorly. The wall was obviously not in such a condition that it presented substantial peril to the workers in that area.
According to the testimony offered by the plaintiff, his son, and Willie Winzer, a Con-Agra employee, the plaintiff had been jackhammering in the area for at least an hour, and perhaps for as long as two and a half hours. From the evidence, we can only speculate that vibrations from the jackhammer facilitated the fall of some of the cinder blocks. However, no expert testimony or other evidence was presented to prove why the blocks fell or to otherwise establish a defect.
In view of the foregoing, we cannot find manifest error in the trial court's decision that the plaintiff has failed to carry his burden of proof.
The plaintiff also alleges that Con-Agra owed him a duty of supervision and warning. Having found that there was no unreasonable risk of harm, we find that the defendant had no duty to warn. Mr. Matthews had every reason to believe that the plaintiff was on the premises to do work for Royal Jones. This job was under the control of Royal Jones. Under the circumstances presented here, Mr. Matthews had no duty to warn or supervise plaintiff's normal activities.

CONCLUSION
Accordingly, the judgment of the trial court is reversed insofar as it held that the plaintiff was not an employee of Royal Jones, and the case is remanded to the trial court for a determination of the amount of workers compensation benefits to which plaintiff is entitled. In all other regards, the judgment of the trial court is affirmed.
REVERSED IN PART AND REMANDED; AFFIRMED IN PART.
PER CURIAM.
Through error, the judgment of this court omitted an allocation of court costs. Therefore, the judgment is amended to reflect an assessment of all costs against defendant-appellee, Royal Jones & Associates.
NOTES
[1] At the time of the accident, the plaintiff may have been considered an independent contractor. However, since he performed a substantial part of his time engaging in manual labor, he would still be considered an employee for worker's compensation purposes. LSA-R.S. 23:1021(6).